## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROSENFELD FAMILY FOUNDATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) **CASE NO.:** |
| | ) |
| E*TRADE FINANCIAL CORPORATION, | ) **COMPLAINT FOR** |
| RODGER A. LAWSON, KEVIN T. KABAT, | ) **VIOLATIONS OF** |
| RICHARD J. CARBONE, ROBERT | ) **FEDERAL SECURITIES LAWS** |
| CHERSI, JAIME W. ELLERTSON, JAMES | ) |
| P. HEALY, JAMES LAM, SHELLEY B. | ) **DEMAND FOR JURY TRIAL** |
| LEIBOWITZ, MICHAEL A. PIZZI, | ) |
| REBECCA SAEGER, DONNA L. WEAVER | ) |
| and JOSHUA WEINREICH, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

Plaintiff Rosenfeld Family Foundation ("Plaintiff"), by its undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

### NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff, a stockholder of E*TRADE Financial Corporation ("E*TRADE" or the "Company"), brings this action against the members of E*TRADE's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to Morgan Stanley ("Morgan Stanley"), through Morgan Stanley's wholly owned subsidiary Moon-Eagle Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On February 20, 2020, E*TRADE announced that it had entered into an Agreement and Plan of Merger ("Merger Agreement"), by which the Company will be acquired by Morgan Stanley (the "Proposed Transaction").  Under the terms of the Merger Agreement, E*TRADE stockholders will receive 1.0432 shares of Morgan Stanley common stock for each share of E*TRADE common stock they own (the "Merger Consideration").

3.      On June 12, 2020, defendants filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC.  The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) the financial projections for the Company and Morgan Stanley that were relied upon by the Board and E*TRADE's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Ardea Partners LP ("Ardea"); and (ii) the financial analyses conducted by J.P. Morgan and Ardea that supported their respective fairness opinions in recommending the Proposed Transaction.

4.      Without additional information the Proxy is materially misleading in violation of federal securities laws.

5.      By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading.  The Proxy is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

6.      The stockholder vote on the Proposed Transaction is forthcoming (the "Stockholder Vote").  Under the Merger Agreement, following a successful Stockholder Vote, the Proposed Transaction will be consummated.

7.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (collectively identified below) from conducting the Stockholder Vote on the Proposed

Transaction unless and until the material information discussed below is disclosed to the holders of E*TRADE  common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9.      Personal jurisdiction exists over each defendant either because each has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendants by this Court permissible under traditional notions of fair play and substantial justice.

10.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District, as the Company's common stock is listed and traded on the NASDAQ Global Select Market within this District; and (ii) the Company's proxy solicitor, Innisfree M&A Incorporated, is headquartered in this District at 501 Madison Avenue, 20th Floor, New York, New York 10022.

## THE PARTIES

11.      Plaintiff is, and has been at all times relevant, the owner of E*TRADE common stock.

12.      Defendant E*TRADE is a Delaware corporation with its principal executive offices located at 671 N. Glebe Road, Arlington, Virginia 22203.  E*TRADE is a financial services company that provides brokerage and related products and services for traders, investors, stock plan administrators and participants, and registered investment advisers. E*TRADE's common stock trades on the NASDAQ Global Select Market under the ticker symbol "ETFC."

13.     Defendant Rodger A. Lawson has served as Chairman of the Board since May 2013 and as a director of the Company since February 2012.

14.     Defendant Kevin T. Kabat has served as Lead Independent Director of the Company since September 2016 and as a director of the Company since June 2016.

15.     Defendant Richard J. Carbone has served as a director of the Company since August 2013.

16.     Defendant Robert Chersi has served as a director of the Company since January 2019.

17.     Defendant Jaime W. Ellertson has served as a director of the Company since May 2019.

18.     Defendant James P. Healy has served as a director of the Company since January 2015.

19.     Defendant James Lam has served as a director of the Company since November 2012.

20.     Defendant Shelley B. Leibowitz has served as a director of the Company since May 2013.

21.     Defendant Michael A. Pizzi has served as Chief Executive Officer and as a director of the Company since August 2019.

22.     Defendant Rebecca Saeger has served as a director of the Company since February 2012.

23.     Defendant Donna L. Weaver has served as a director of the Company since April 2003.

24.     Defendant Joshua Weinreich has served as a director of the Company since 2018.

25.     Defendants referenced in ¶¶ 13-24 are collectively referred to as Individual Defendants and/or the Board, and together with E*TRADE, "Defendants."

**FURTHER SUBSTANTIVE ALLEGATIONS**

26.     On February 20, 2020, E*TRADE issued a press release announcing the Proposed Transaction.  The press release read, in relevant part:

> NEW YORK & ARLINGTON, Va.--(BUSINESS WIRE)--Morgan Stanley (NYSE: MS) and E*TRADE Financial Corporation (NASDAQ: ETFC) have entered into a definitive agreement under which Morgan Stanley will acquire E*TRADE, a leading financial services company and pioneer in the online brokerage industry, in an all-stock transaction valued at approximately $13 billion. Under the terms of the agreement, E*TRADE stockholders will receive 1.0432 Morgan Stanley shares for each E*TRADE share, which represents per share consideration of $58.74 based on the closing price of Morgan Stanley common stock on February 19, 2020.

> The combination will significantly increase the scale and breadth of Morgan Stanley's Wealth Management franchise, and positions Morgan Stanley to be an industry leader in Wealth Management across all channels and wealth segments. E*TRADE has over 5.2 million client accounts with over $360 billion of retail client assets, adding to Morgan Stanley's existing 3 million client relationships and $2.7 trillion of client assets. Morgan Stanley's full-service, advisor-driven model coupled with E*TRADE's direct-to-consumer and digital capabilities, will allow the combined business to have best-in-class product and service offerings to support the full spectrum of wealth.

> "E*TRADE represents an extraordinary growth opportunity for our Wealth Management business and a leap forward in our Wealth Management strategy. The combination adds an iconic brand in the direct-to-consumer channel to our leading advisor-driven model, while also creating a premier Workplace Wealth provider for corporations and their employees. E*TRADE's products, innovation in technology, and established brand will help position Morgan Stanley as a top player across all three channels: Financial Advisory, Self-Directed, and Workplace," said James Gorman, Chairman and CEO of Morgan Stanley. "In addition, this continues the decade-long transition of our Firm to a more balance sheet light business mix, emphasizing more durable sources of revenue."

> "Finally, I am delighted that Mike Pizzi, CEO of E*TRADE, will be joining Morgan Stanley. Mike will continue to run the E*TRADE business within the Morgan Stanley franchise and lead the ongoing integration effort. Mike will report to me and will join the Morgan Stanley Operating and Management Committees. In addition, we will invite one of E*TRADE's independent directors to join our

Board. We look forward to welcoming the infusion of management and technology talent that E*TRADE will bring to Morgan Stanley."

"Since we created the digital brokerage category nearly 40 years ago, E*TRADE has consistently disrupted the status quo and delivered cutting-edge tools and services to investors, traders, and stock plan administrators," said Mike Pizzi, Chief Executive Officer of E*TRADE. "By joining Morgan Stanley, we will be able to take our combined offering to the next level and deliver an even more comprehensive suite of wealth management capabilities. Bringing E*TRADE's brand and offerings under the Morgan Stanley umbrella creates a truly exciting wealth management value proposition and enables our collective team to serve a far wider spectrum of clients."

The transaction will create a leading player in Workplace Wealth, combining E*TRADE's leading U.S. stock plan business with Shareworks by Morgan Stanley, a top provider of public stock plan administration and private cap table management solutions. This combination will enable Morgan Stanley to accelerate initiatives aimed at enhancing the workplace offering through online brokerage and digital banking capabilities, providing a significantly enhanced client experience.

E*TRADE has been a pioneer in the digital brokerage and banking space for nearly 40 years and is an iconic brand. E*TRADE's hallmarked, consumer-facing technology platforms will complement Morgan Stanley's leading advisor-facing technology. E*TRADE also provides a full suite of digital banking services, including direct integration with brokerage accounts, checking and high-yield savings accounts, significantly accelerating Morgan Stanley's digital banking efforts. The transaction adds approximately $56 billion of low-cost deposits, which will provide significant funding benefits to Morgan Stanley.

Importantly, the acquisition marks a continuation of Morgan Stanley's decade-long effort to rebalance the Firm's portfolio of businesses so that a greater percentage of Firm revenues and income are derived from balance sheet light and more durable sources of revenues. Upon integration, the combined Wealth and Investment Management businesses will contribute approximately 57% of the Firm's pre-tax profits, excluding potential synergies, compared to only approximately 26% in 2010.

The transaction provides significant upside potential for shareholders of both Morgan Stanley and E*TRADE. Shareholders from both companies will benefit from potential cost savings estimated at approximately $400 million from maximizing efficiencies of technology infrastructure, optimizing shared corporate services and combining the bank entities, as well as potential funding synergies of approximately $150 million from optimizing E*TRADE's approximate $56 billion of deposits. In addition, Morgan Stanley will have enhanced technology and service capabilities to capture a larger portion of the estimated approximate $7.3 trillion of

combined current customer assets held away, which will drive significant revenue opportunities.

Morgan Stanley will be better positioned to generate attractive financial returns through increased scale, improved efficiency, higher margins, stronger returns on tangible common equity, and long-term earnings accretion. Morgan Stanley expects the acquisition to be accretive once fully phased-in estimated cost and funding synergies are realized. Morgan Stanley will maintain its strong capital position, with the Firm's common equity tier 1 ratio estimated to increase by over 30bps at closing. The transaction is expected to increase the Firm's return on tangible common equity by more than 100bps with fully phased-in cost and funding synergies and improve Wealth Management's pre-tax profit margin to over 30%.

**The Proxy Misleads E\*TRADE Stockholders by Omitting Material Information**

27.     On June 12, 2020 Defendants filed the materially incomplete and misleading Proxy with the SEC and disseminated it to E\*TRADE's stockholders.   Designed to convince E\*TRADE's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the financial projections for the Company and Morgan Stanley that were relied upon by the Board and E\*TRADE's financial advisors, J.P. Morgan and Ardea; and the financial analyses conducted by J.P. Morgan and Ardea that supported their respective fairness opinions.

### *The Company's and Morgan Stanley's Financial Projections*

28.     The summary of the financial analyses conducted by the Company's financial advisors states that the advisors reviewed the financial projections for E\*TRADE and Morgan Stanley created by Company management in preparing their financial analyses.

29.     These projections were prepared by Company management and provided to the Board in connection with their evaluation of the Proposed Transaction and the Board approved their use by J.P. Morgan and Ardea in connection with their financial analyses

30.     The disclosure of these projections in the Proxy is materially misleading because it fails to disclose: (i) the annual cash amounts estimated to be distributed to E\*TRADE stockholders

in the form of dividends and share repurchases over the period beginning December 31, 2019 through December 31, 2029; (ii) E*TRADE's annual amount of additional capital distributions (or minus the additional capital requirements) required to achieve a Tier 1 Leverage Ratio target of 6.75% at the end of each year over the period beginning December 31, 2019 through December 31, 2029; (iii) E*TRADE's tangible book value over the projection period; (iv) the cash amounts estimated to be distributed to Morgan Stanley stockholders in the form of dividends and share repurchases during each year 2020 to 2029; (v) the implied amount of the additional cash distributions Morgan Stanley would make to its stockholders during each year 2020 through 2029 to achieve a supplementary leverage ratio of 6%; (vi) Morgan Stanley's tangible book value per share over the projection period; and (vii) Morgan Stanley's estimated earnings per share ("EPS") over the projection period.

31.     The above-referenced omitted information relating to the Company's and Morgan Stanley's financial projections would, if disclosed, significantly alter the total mix of information available to E*TRADE stockholders regarding the future value of the Company and Morgan Stanley.

32.     Thus, the omission of this projected financial information serves to prevent Company stockholders from evaluating the fairness analyses conducted by J.P. Morgan and Ardea, or to perform their own valuation of the Company and Morgan Stanley.

33.     Defendants' failure to provide E*TRADE stockholders with the foregoing material information renders the statements in the *Certain E*TRADE Unaudited Prospective Financial Information* section of the Proxy false and/or materially misleading.

### *The Valuation Analyses and Fairness Opinions of E*TRADE's Financial Advisors*

34.     The Proxy describes J.P. Morgan's and Ardea's fairness opinions and the various

valuation analyses performed in support of their opinions.  However, the description of J.P. Morgan's and Ardea's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, E*TRADE's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's and Ardea's fairness opinions in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to E*TRADE stockholders.

35.     With respect to J.P. Morgan's Public Trading Multiples Analysis – E*TRADE Standalone, the Proxy fails to disclose the individual multiples and financial metrics analyzed by J.P. Morgan.

36.     With respect to J.P. Morgan's Dividend Discount Analysis – E*TRADE Standalone, the Proxy fails to disclose: (i) the cash amounts estimated to be distributed to E*TRADE stockholders in the form of dividends and share repurchases during each year 2020 to 2029; (ii) the implied amount of the additional cash distributions E*TRADE would make to its stockholders during each year 2020 through 2029 to achieve a Tier 1 Leverage Ratio of 6.75%; (iii) quantification of the terminal values of E*TRADE; and (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 11.0% to 12.0%.

37.     With respect to J.P. Morgan's Public Trading Multiples Analysis – Morgan Stanley Standalone, the Proxy fails to disclose Morgan Stanley's EPS for calendar years 2020 and 2021.

38.     With respect to J.P. Morgan's Dividend Discount Analysis – Morgan Stanley Standalone, the Proxy fails to disclose: (i) the cash amounts estimated to be distributed to Morgan Stanley stockholders in the form of dividends and share repurchases during each year 2020 to 2029; (ii) the implied amount of the additional cash distributions Morgan Stanley would make to

its stockholders during each year 2020 through 2029 to achieve a supplementary leverage ratio of 6%; (iii) quantification of the terminal values of Morgan Stanley; and (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 10.25% to 11.25%.

39.     With respect to Ardea's Dividend Discount Analyses for E*TRADE, the Proxy fails to disclose: (i) the annual cash amounts estimated to be distributed to E*TRADE stockholders in the form of dividends and share repurchases over the period beginning December 31, 2019 through December 31, 2029; (ii) the annual amount of additional capital distributions (or minus the additional capital requirements) required to achieve a Tier 1 Leverage Ratio target of 6.75% at the end of each year over the period beginning December 31, 2019 through December 31, 2029; (iii) quantification of the estimate of E*TRADE's terminal year cash distributions; (iv) quantification of the terminal values of E*TRADE; and (v) quantification of the inputs and assumptions underlying the discount rates ranging from 11.00% to 13.00%.

40.     Without such undisclosed information, E*TRADE stockholders cannot evaluate for themselves whether the financial analyses performed by J.P. Morgan and Ardea were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which J.P. Morgan's and Ardea's opinions and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

41.     Defendants' failure to provide E*TRADE stockholders with the foregoing material information renders the statements in the *Opinion of E*TRADE's Financial Advisors* section of the Proxy false and/or materially misleading.

42.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

### Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and E*TRADE

43.     Plaintiff repeats all previous allegations as if set forth in full.

44.     During the relevant period, Defendants caused to be disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

45.     By virtue of their positions within the Company, the Defendants were aware of this information and of their duty to disclose this information in the Proxy.  The Proxy was prepared, reviewed, and/or disseminated by the Defendants.  It misrepresented and/or omitted material facts, including material information about the financial projections for the Company and Morgan Stanley, and the financial analyses conducted by the Company's financial advisors that supported their respective fairness opinions.  The Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

46.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

47.     By reason of the foregoing, the Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

Case 1:20-cv-05013   Document 1   Filed 06/30/20   Page 12 of 14

48.     Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure Defendants' misconduct is corrected.

## COUNT II

**Claim for Violation of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

49.     Plaintiff repeats all previous allegations as if set forth in full.

50.     The Individual Defendants acted as controlling persons of E*TRADE within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as officers and/or directors of E*TRADE, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were, thus, directly involved in the making of the Proxy.

53.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, E*TRADE's stockholders will be irreparably harmed.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in its favor on behalf of E*TRADE, and against Defendants, as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to E*TRADE stockholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary

to make the statements contained therein not misleading;

        D.      Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

        E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

        F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  June 30, 2020

By  */s/ William B. Federman*
      **FEDERMAN & SHERWOOD**
      William B. Federman WF9124
      10205 North Pennsylvania Avenue
      Oklahoma City, OK 73120
      Tel: (405) 235-1560
      Fax: (405) 239-2112
      -and-
      212 W. Spring Valley Road
      Richardson, Texas 75081

      *Attorneys for Plaintiff*